631 So.2d 283 (1993)
B.C.B.
v.
STATE.
CR 92-1143.
Court of Criminal Appeals of Alabama.
September 3, 1993.
Rehearing Denied October 22, 1993.
Certiorari Denied December 30, 1993.
John O. Cameron, Montgomery, for appellant.
James H. Evans, Atty. Gen., and Lisa Gunter, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1930172.
BOWEN, Presiding Judge.
This is the direct appeal from the order of the Juvenile Court of Montgomery County *284 directing the transfer of the appellant, 17-year-old B.C.B., to circuit court for prosecution as an adult on a charge of capital murder. In this appeal, the appellant contends that the juvenile court erred in ordering his transfer and that, instead, the court should have proceeded under the involuntary commitment of minors provision of Ala.Code 1975, § 12-15-90.
The transfer of a juvenile from juvenile court to circuit court is governed by Ala. Code 1975, § 12-15-34. Subsection (c) thereof provides: "When there are grounds to believe that the child is committable to an institution or agency for the mentally retarded or mentally ill, the court shall proceed as provided in section 12-15-70." Section 12-15-70 provides, in pertinent part: "If upon... procedure as provided in section 12-15-90, the court has reason to believe that a ... child is mentally ill or mentally retarded, as defined in this chapter [(Chapter 15 of Title 12)], the court shall proceed in the manner set out in section 12-15-90." (Emphasis added.) Despite the emphasized language of § 12-15-70, the terms "mentally ill" and "mentally retarded" are not defined in Chapter 15.
Under § 12-15-90(i), a juvenile court may order a child committed "to the custody of the state department of mental health and mental retardation on the basis that [the child] is mentally ill ... if substantial evidence proves that:
"(1) The ... child sought to be committed is mentally ill; and

"(2) As a consequence of the mental illness, the ... child poses a real and present threat of substantial harm to himself or to others; and

"(3) The threat of substantial harm has been evidenced by a recent overt act; and

"(4) Treatment is available for the ... child's mental illness or that confinement is necessary to prevent the ... child from causing substantial harm to himself or to others; and

"(5) Commitment is the least restrictive alternative necessary and available for treatment of the ... child's illness." (Emphasis added.)
A juvenile court may order a child committed to the custody of "the state department of mental health and mental retardation on the basis that [the child] is mentally retarded ... if substantial evidence proves that:
"(1) The ... child sought to be committed is mentally retarded; and

"(2) The said mentally retarded ... child is not borderline or mildly retarded....; and

"(3) The ... child, if allowed to remain in the community, is likely to cause serious injury to himself or others, or that adequate care, rehabilitation and training opportunities are available only at a facility provided by the department of mental health and mental retardation."
Ala.Code 1975, § 12-15-90(j) (emphasis added).
In the present case, there is not "substantial evidence" that the appellant is either mentally ill or mentally retarded. In his forensic evaluation report, clinical psychologist Karl Kirkland stated that the appellant "does suffer from a long-standing conduct disorder that appears to be evolving into a full-blown antisocial personality disorder." C.R. 33-34. Dr. Kirkland also stated in his report that his evaluation revealed "pervasive deficits in [the appellant's] personal growth, moral development, academic achievement, and vocational growth and development." C.R. 34. However, he discovered no "mental disorder that would render [the appellant] unable to appreciate the criminality of his behavior at the time of this particular offense" and he stated that the appellant "is at least of borderline intelligence." C.R. 33. Dr. Kirkland concluded that the appellant "does not appear to need treatment for any mental condition at this time," C.R. 34.
As noted above, "mental illness" is not defined in Chapter 15 of Title 12. The psychologist appears to have equated "mental illness" with the "mental disease or defect" defense found in § 13A-3-1. That section provides:
"(a) It is an affirmative defense to a prosecution for any crime that, at the time of the commission of the acts constituting the *285 offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts....
"(b) `Severe mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."
We find the application of the concepts embodied in § 13A-3-1 proper in view of the fact that § 12-15-90(i)(1) and (2) require the juvenile court to find, as a prerequisite to ordering a child committed to the custody of the state department of mental health and mental retardation, that the child is both mentally ill and that "[a]s a consequence of the mental illness, the ... child poses a real and present threat of substantial harm to himself or to others." (Emphasis added.)
Although "mentally retarded" is not defined in Chapter 15 of Title 12, § 12-15-90(j)(1) and (2) require the juvenile court to find, as a prerequisite to ordering a child committed to the custody of the state department of mental health and mental retardation, that the child "is mentally retarded," and that the child "is not borderline or mildly retarded." (Emphasis added). The psychologist clearly stated in his report that the appellant "is at least of borderline intelligence." C.R. 33. While the appellant does have an IQ of 73, low IQ alone is clearly not sufficient to support a finding that a child "is committable to an institution or agency for the mentally retarded or mentally ill." § 12-15-34(c); see § 12-15-90(j)(2); see also Taylor v. State, 507 So.2d 1034, 1035-36 (Ala.Cr. App.1987) (juvenile court found no grounds to commit juvenile to institution or agency for the mentally retarded where the probation officer testified that the juvenile was "`not your average youth of mental ability,'" and had "`low intellectual functioning,'" and two mental reports showed only a mental deficiency and not a mental illness).
While the psychologist stated that the appellant's "conduct disorder ... appears to be evolving into a full-blown antisocial personality disorder," it is clear from the remainder of his report that the appellant does not suffer from a mental illness or from mental retardation. The evidence in this case was simply insufficient to satisfy the requirements of either § 12-15-90(i) or § 12-15-90(j). Consequently, the juvenile court properly refused to commit the appellant to the custody of the state department of mental health and mental retardation.
The judgment of the juvenile court is affirmed.
AFFIRMED.
All Judges concur.